NOT FOR PUBLICATION

|  |  |
|---|---|
|  | **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF NEW JERSEY** |
| J.S. and C.S. o/b/o M.S., | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | **OPINION** |
| v. | Consolidated Civil Action No.<br>05-cv-04891 (DMC) |
| SPRINGFIELD TOWNSHIP BOARD OF EDUCATION, |  |
| Defendant. |  |
| SPRINGFIELD TOWNSHIP BOARD OF EDUCATION, |  |
| Plaintiff, |  |
| v. | Civil Action No. 05-cv-5043 (DMC) |
| J.S. and C.S. o/b/o M.S., |  |
| Defendants. |  |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon cross-motions for summary judgment by Defendant Springfield Township Board of Education ("Defendant" or "District") and by Plaintiffs J.S. and C.S. on behalf of M.S. (collectively "Plaintiffs") pursuant to Federal Rule of Civil Procedure 56. Pursuant to Rule 78 of the Federal Rules of Civil Procedure no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion for summary judgment is **denied** and that Plaintiffs' motion

for summary judgment is accordingly **granted**. Additionally, Plaintiffs' application for reimbursement of counsel fees is **granted**.

I.     BACKGROUND

   A.     **Factual Background**

M.S. was born on July 17, 1994 and suffers from dyslexia, a central auditory processing disorder and attention deficit hyperactivity disorder ("ADHD"). (J-19). M.S. exhibits weaknesses in reading and language skills. In February 2002, M.S. was classified as "Eligible for Special Education and Related Services" under the category of "Other Health Impaired," based on the diagnosis of ADHD.

Prior to M.S.'s classification as "Eligible for Special Education and Related Services," he had minimal academic success. M.S. failed his first year of kindergarten and was retained in kindergarten by the District.

   1.     <u>2002-2004 IEPs Developed for M.S.</u>

To address and meet M.S.'s needs as a handicapped student, the Child Study Team ("CST") convened to develop an Individualized Education Program ("IEP") for M.S. on February 2, 2002. (J-30). Pursuant to the 2002 IEP, M.S. was provided with resource center instruction for language arts and reading, with multi-sensory strategies and learning strategies to address his attentional issues as well as his reading weaknesses. Additionally, M.S. was provided with speech and language therapy to address his needs. (J-30).

M.S. was not diagnosed with an auditory processing disorder until April 2002. (J-32). Thereafter, the CST incorporated the recommendations of the audiologist into his program. (J-34, J-35). In May 2002, the CST met and developed another IEP for M.S., including resource center

instruction for reading and language arts, with mathematics to be added in the Fall of 2002. (J-35). On December 13, 2001, M.S.'s parents, having done research on their own, recommended in a letter to the District that their son be tested for dyslexia. (J-24). M.S. was then later diagnosed with developmental dyslexia in September 2002 and the recommendations of M.S.'s neurologist were incorporated into his IEP and program. (J-34, J-36).

Thereafter, M.S.'s IEP was reviewed annually on February 5, 2003 and again on January 20, 2004. (J-43, J-50). At the January 2004 meeting the CST added a classroom aide in science and social studies to M.S.'s IEP in light of the increased language skills necessary in the third and fourth grade. (J-50). Additionally, the CST continued speech therapy and resource room small group instruction for reading, language arts and math. (J-50). Additional multi-sensory strategies and supplemental aids and services were also included in the IEP. (J-50).

The CST also recommended, but Plaintiffs declined, an extended school year program to better prepare M.S. for third grade during the summer. (2/15/05 Tr. 56-58). The extended program would have consisted of five sessions of thirty minutes per week of multi-sensory one-on-one reading instruction and tutorial lab to provide remediation in reading and math for sixty minutes. (J-49). Further, the CST recommended keyboard instruction to foster M.S.'s independence.

At the beginning of the 2004-2005 school year the District conducted a re-evaluation of M.S. Testing revealed that M.S.'s cognitive abilities remained in the average range. (J-51).

### 2. M.S.'s Progress in the District

The District emphasizes that M.S. made progress from the time he was initially classified as "Eligible for Special Education and Related Services" to the time Plaintiffs unilaterally withdrew M.S. from Springfield public schools. The District cites test results from the 2002-2003 and 2003-

2004 school years as evidence of M.S.'s progress. The District claims that M.S. displayed meaningful growth and progress during the 2002-2003 school year, as evidenced by school officials' testimony and standardized test scores. (J-43, 48, 50, 51). As to the 2003-2004 school year, the District claims that M.S. continued to exhibit growth and meaningful progress, relying primarily on testimony from his third grade teachers. (2/16/05 Tr. 88-4 to 12, 123- 13 to 22). The District also cites M.S.'s scores on the NJ ASK test, where he exhibited partial proficiency in language arts literacy and proficiency in math. (2/16/05 Tr. 187- 12 to 20).

### 3. M.S.'s Lack of Progress in the District

In the Spring of 2004 Plaintiffs hired Dr. Edna Barenbaum to evaluate M.S. (J-52). Dr. Barenbaum is an expert in educational psychology, special education, standardized testing, attention disabilities such as ADHD, the administration and construction of standardized tests, and whether IEPs are compliant with the IDEA in terms of content and goals. ( 3/18/05 Tr. 33-21 to 35-19, 42-10 to 22). Dr. Barenbaum found that M.S. had received a total of four years worth of schooling, yet he had not yet advanced a full year in his abilities. (3/18/05 Tr. 90-9 to 15). M.S.'s case manager, June Jennings, agreed that by 2004 M.S. had very limited proficiency in reading fluency, math fluency, spelling, passage comprehension, and applied problems. (J-50, 2/15/05 Tr. 145- 13 to 21, 146- 5 to 17). Dr. Barenbaum reviewed the IEP developed for the 2004-2005 school year and found that it was insufficient to address M.S.'s educational needs. (J-57). She found the program lacking in both intensity and duration, stating that the one to one instruction offered by the 2004-2005 "would not be enough." (5/6/05 Tr. 53-1). Dr. Barenbaum's general finding was simply that the school was not offering M.S. enough multisensory instruction or instruction intense enough to address M.S.'s

specific learning needs.

        4.       2004-2005 Proposed IEP

M.S.'s recommended program for the 2004-2005 school year included an integrated multi-sensory program throughout the school day. (J-57). M.S. was to be provided with the Wilson reading program to address reading disabilities and dyslexia on an individual basis. (J-57). This program was integrated into M.S.'s other academic instruction. (J-57). One of M.S.'s speech sessions would be conducted within the context of his regular classroom to promote coordination of the program with his normal courses. (J-57). Further, the 2004-2005 IEP called for all the teachers working with M.S., as well as his speech therapist, to collaborate several times a week to assure that his program was coordinated. (2/16/05 Tr. 76-77, 142-43, 150).

The proposed 2004-2005 IEP was presented at the July 19, 2004 meeting. The record indicates that Plaintiffs neither rejected nor objected to the proposed IEP.

The District emphasizes that it was not provided with any input from Dr. Barenbaum's report until June 2004, approximately one month prior to the final IEP meeting. Further, Dr. Barenbaum did not attend any of M.S.'s IEP meetings. Nevertheless, based upon Dr. Barenbaum's suggestions, the District claims that it added further individualized instruction utilizing a multi-sensory reading approach for three forty minute sessions per week during the school year and a small group resource program to M.S.'s IEP. (J-57, J-62). Furthermore, in an attempt to conform with Dr. Barenbaum's suggestions, additional training of staff was added and the multi-sensory instruction was integrated into M.S.'s academic day and coordinated with his remaining instruction. (J-57).

### 5. Unilateral Transfer to Winston School

On January 20, 2004, dissatisfied with M.S.'s lack of progress and the proposed 2004-2005 IEP, Plaintiffs applied for M.S. to attend the Winston School. In a letter to the District dated June 9, 2004, Plaintiffs enclosed a copy of Dr. Barenbaum's report and requested that the 2004-2005 IEP fulfill her recommendation. (J-55). In addition, the letter suggested placement at the Winston School as a possible remedy. Id. After Dr. Barenbaum concluded that the 2004-2005 IEP proposed by the District did not address her recommendations, Plaintiffs sent another letter on August 11, 2004. (J-60). Plaintiffs notified the District that they were placing M.S. at the Winston School, and requested reimbursement for the costs associated therewith. (Id.).

The Winston School is not approved by the New Jersey Department of Education for special education. (2/15/05 Tr. 91-18 to 94-6). However, the Winston School fulfills Dr. Barenbaum's recommendations. (3/18/05 Tr. 160- 7 to 8). According to Dr. Barenbaum, the Winston school satisfies M.S.'s needs and is having a positive effect on his learning. (Id. at 159). Most notably, over the first four months at the Winston School, M.S. has experienced growth in his reading comprehension improving from a 1.4 grade equivalency to a 2.1 grade equivalency. (Id. at 161- 4 to 11). Plaintiffs contend that due to his improvement and the education offered by the Winston School, M.S. is now receiving a FAPE.

### B. Procedural Background

On September 8, 2004, Plaintiffs filed a due process petition with the Division of Special Education which was thereafter transferred to the Office of Administrative Law. The case was then assigned to Administrative Law Judge Barry N. Frank. ("ALJ").

During hearings held on February 15-17, March 14, March 18, May 6 and May 8, 2005, the ALJ heard testimony from *inter alia* Dr. Barenbaum, Plaintiffs' educational expert, Dr. Rotter, Defendant's expert, Pam Bloom, the head of the Winston School, and June Jennings, M.S.'s case manager. On September 12, 2005, Judge Frank issued a decision finding that Defendant "failed to demonstrate by preponderance of the credible evidence that it has provided M.S. with a free and appropriate public education in the least restrictive environment" and concluding that "the appropriate placement for M.S. would be the Winston School for the fourth grade and upcoming fifth grade." J.S. o/b/o M.S. v. Springfield Bd. of Educ., OAL 1, 14-15 (July 20, 2005).[1] ("ALJ Decision").

## II.   MODIFIED *DE NOVO* STANDARD OF REVIEW

Title 20 U.S.C. § 1415(i)(2) vests the parties in this action with the right to bring a civil action in this Court to review the ALJ's determination. Section 1415 requires this Court to (i) receive the records of the administrative proceeding; (ii) hear additional evidence at the request of a party; and (iii) base its decision on the preponderance of the evidence, granting such relief as the Court determines appropriate. See 20 U.S.C. § 1415(i)(2)(C)(i)-(iii); Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir. 2004). Further, the Supreme Court has cautioned that "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982)

---

[1] The ALJ Decision was captioned as J.S. o/b/o M.S. v. Springfield Board of Education, OAL, Docket No.: EDS 11220-04N, Agency Reference No.: 2005-9376.

In reviewing the ALJ's decision this Court must apply a "modified version of *de novo* review," giving "due weight to the factual findings of the ALJ." L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir. 2006) (citing Rowley, 458 U.S. at 206; Shore Reg'l, 381 F.3d at 199; S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 269-70 (3d Cir. 2003)). The Third Circuit has instructed that "[f]actual findings from the administrative proceedings are to be considered prima facie correct." Shore Reg'l, 381 F.3d at 200. Further, the Third Circuit has explained that giving "special weight" to an ALJ's factual determinations means that this Court "must accept the state agency's credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion.' " Id. (quoting Carlisle Area Sch. v. Scott P., 62 F.3d 520, 527-29 (3d Cir. 1995)) (emphasis in original). "In this context, the word 'justify' demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court." Id. (citing Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985)). Accordingly, to overturn the ALJ's decision in this case, the Court must point to "nontestimonial evidence that undermined the testimony of these witnesses" and "provide an explanation for its decision to reject the ALJ's decision to credit" one witness over another. Id. (citing S.H., 336 F.3d at 271).

The Supreme Court recently clarified that when reviewing the ALJ's decision, the district court must bear in mind that "[t]he burden of persuasion in an administrative hearing challenging an IEP is properly placed on the party seeking relief." Schaffer v. Weast, 546 U.S. 49, 50 (2005). See also L.E., 435 F.3d at 391 (holding that a party challenging the appropriateness of an IEP in New Jersey has the burden of proof). In this case, the burden of proof during the administrative

proceeding rested with Plaintiffs, J.S. and C.S., on behalf of M.S., because they were the parties challenging the IEP and seeking relief through a due process hearing.

**III.    DISCUSSION**

    **A.    Purpose and Requirements of the IDEA**

This case is brought pursuant to the Individuals with Disabilities Act ("IDEA").  The IDEA is a federal statute wherein Congress endeavored to "increase the personal independence and enhance the productive capacities of handicapped citizens."  Kruelle v. New Castle County Sch. Dist., 642 F.2d 687, 691 (3d Cir. 1981).  Stated generally, the IDEA provides funding to any state or local agency that demonstrates that it "has in effect a policy that assures all handicapped children the right to a free appropriate public education."  Rowley, 458 U.S. at 180-81 (quoting 20 U.S.C. § 1412(1)). A "free appropriate public education" ("FAPE") must be "tailored to the unique needs of the handicapped child by means of an [IEP]."  Id. (citing 20 U.S.C. § 1401(18)).  Specifically, "[s]tate educational authorities must identify and evaluate disabled children, §§ 1414(a)-(c), develop an IEP for each one, § 1414(d)(2), and review every IEP at least once a year, § 1414(d)(4)."  Schaffer, 546 U.S. at 532.   Furthermore, the IDEA requires that disabled students be educated in the least restrictive environment ("LRE"), meaning "[t]o the maximum extent appropriate . . . with children who are not disabled."  See L.E., 435 F.3d at 389 (quoting 20 U.S.C. § 1412(a)(g)(A)).  "When a state fails to provide a [FAPE], it must reimburse parents for resulting private school costs."  Id. (citing T.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 577 (3d Cir. 2000); Sch. Comm. of the Town of Burlington v. Dep't of Educ. of Commonwealth of Mass., 471 U.S. 359, 370 (1985)).

In this case, Plaintiffs, J.S. and C.S., on behalf of M.S., contend that the proposed IEP failed

to offer a FAPE because it failed to confer educational benefits on M.S. Plaintiffs requested a due process hearing (i) seeking reimbursement for all related expenses in attending the Winston School since M.S. was unilaterally placed there in the fall of 2004-2005 school year; (ii) seeking an order declaring the appropriate placement during the 2005-2006 school year be the Winston School; (iii) that Plaintiffs be retroactively reimbursed for placement at the Winston School during the 2004-2005 school year; and (iv) that reimbursement for attendance at that school be maintained by the school district for as long as the placement remains appropriate. ALJ Decision at 2.

### B.    Issues Presented

This case presents three issues. First, did the District's 2004-2005 IEP offer a FAPE? Second, did the Plaintiffs satisfy the notice requirements of N.J.A.C. 6A:14-2.10(c) (2007)? Third, whether Plaintiffs are entitled to reimbursement of attorney's fees for the due process petition and appeal filed on behalf of M.S.?

### C.    Appropriateness of 2002-2004 IEP

To comply with the IDEA, an IEP must be "reasonably calculated to enable the child to receive educational benefits." Rowley, 458 U.S. 206-07 (1982). Nevertheless, "however desirable the goal of maximizing each child's potential may be in terms of individuals, the court obviously recognized that achieving such a goal would be beyond the fiscal capacity of state and local governments, and that Congress had realized that fact as well." Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 178-79 (3d Cir. 1988). To meet the IDEA standard for a FAPE, the IEP must provide "significant learning and confer a meaningful benefit." Ridgewood Bd. of

Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999).

M.S. spent four educational years in the Springfield school system. An IEP was first developed for M.S. in the 2002-2003 school year. (J-30). This IEP provided resource center instruction for language arts and reading with multi-sensory learning strategies to address his attentional and reading weaknesses. (J-30). As the years passed the CST team regularly updated and reviewed M.S.'s IEP. (J-34, 35, 36). At the January 2004 meeting, the CST added a classroom aide in science and social studies to M.S.'s IEP due to the increased language skills necessary in the third and fourth grades. (J-50).

The District claims that M.S. was making progress between 2002 and 2004, relying heavily on standardized test scores and school official's testimony. However, the ALJ admonished both the use of test scores and several of the District's witnesses. Specifically, the ALJ considered the testimony of the District's expert witness, Dr. Rotter, to be "disturbing," citing "her lack of interaction with M.S." ALJ Decision at 8. He later found that her testimony was not "fully credible." Id. Additionally, the ALJ found the District's witnesses lacked credibility, including June Jennings, M.S.'s case manager, and Camille Paolino, a speech and language pathologist employed by the District, who testified that M.S.'s difficulty in all of his subjects was due to his "limited progress with regard to reading fluency." Id. at 11. In sum, the ALJ stated, "while I recognize that progress is relative, I do not see what significant progress if any that M.S. is making predicated upon these reports and predicated upon this particular witness's [Camille Paolino's] testimony." Id. at 13. The ALJ noted that the District's witnesses consistently showed a lack of credibility. Id.

In contrast, the ALJ agreed with Plaintiffs' position - that M.S. was not being given a FAPE

-11-

through his IEP - finding Plaintiffs' expert, Dr. Barenbaum, to be particularly credible. Dr. Barenbaum personally assessed M.S. and "indicated that she did not believe this program was individualized for M.S. and was not conferring a great benefit on him." Id. at 7. The ALJ also found the testimony of Pam Bloom, the head of the Winston School, to be credible, who, with confirmation from Dr. Barenbaum, testified that M.S. was experiencing "marked improvements" at the Winston School. Id. at 10.

Reviewing the ALJ's decision pursuant to a modified *de novo* review standard, this court must give "special weight" to the ALJ's factual determinations. This Court need not engage in any independent credibility determinations because extrinsic evidence has not been presented that would justify questioning the ALJ's conclusions as to credibility. Furthermore, the ALJ made strong findings as to the lack of credibility displayed by the District's witnesses, thereby bolstering this Court's decision to refrain from making independent credibility determinations. Therefore, it is the finding of this Court that from 2002 to 2004 the District did not provide M.S. with a FAPE that conferred "significant learning" or "meaningful benefit."

### D. Appropriateness of Proposed 2004-2005 IEP

As set forth above, on July 19, 2004 the District's CST team proposed a new IEP for the 2004-2005 school year. M.S. was to be provided the Wilson reading program, continued speech sessions and, based on Dr. Barenbaum's instruction, individualized multi-sensory reading instruction. (J-57). This Court must decide whether or not this proposed 2004-2005 IEP would have conferred on M.S. "significant learning" and a "meaningful benefit." If so, then the District would not be responsible for reimbursing Plaintiffs' unilateral removal of M.S. to the Winston School.

Defendant contends that the 2004-2005 plan was sufficient to provide a FAPE. The District depends primarily on the testimony of Plaintiffs' expert, Dr. Barenbaum, stating that the Wilson program and some of the District's other recommendations were best suited to address M.S.'s needs. (5/6/05 Tr. 49-51). However, undermining Defendant's argument is Dr. Barenbaum's testimony that the District's program did not go far enough in providing support for M.S. Her reaction to the District's proposed program was simply that "[n]o, it would not be enough." Id. at 53. She stated that M.S. needed "as much intensive work as he can get." Id. Similarly, it was the finding of the ALJ that the proposed 2004-2005 IEP would not have been sufficient to provide M.S. with "significant learning" and a "meaningful benefit." ALJ Decision at 14-15.

Plaintiffs, based on Dr. Barenbaum's assessment, argue that the 2004-2005 IEP was insufficient in several ways. Plaintiffs put forth several arguments regarding the IEP, six of which are persuasive and well supported by the record. First, the IEP did not incorporate goals and objectives that worked on reading fluency. (3/18/05 Tr. 92-16 to 22). Second, the goals and objectives presented by the IEP are very vague and do not allow for the more specific measurements needed to assess a slower learning child. (Id. at 93-1 to 5). Third, the IEP did not offer enough multisensory reading, which should have been provided to M.S. everyday, not just three days a week. (Id. at 94-6 to 11). Fourth, the District did not offer the continual repetition necessary to address problems with M.S.'s working memory and low processing index. (Id. at 94-15 to 25). Fifth, the IEP would have created a very restrictive setting. (Id. at 96-13 to 16). Sixth, this IEP utilized the same goals and objectives since 2002. (J-43, J-49, J-57). These arguments strongly support a finding that the 2004-2005 IEP did not offer a FAPE.

Additionally, the ALJ found Dr. Barenbaum's testimony to be persuasive and credible. The ALJ stated that, "Dr. Barenbaum indicated she did not believe this program was individualized for M.S. and was not conferring a great benefit upon him." ALJ Decision at 7. The modified *de novo* review standard requires this Court to give "special weight" to the ALJ's factual determinations. Here, this Court has found no non-testimonial, extrinsic evidence in the record that could justify a conclusion contradictory to the ALJ's findings. Therefore, it is the finding of this Court that the 2004-2005 IEP did not offer a FAPE.

### E. Appropriateness of the Winston School for M.S.

M.S. was placed in the Winston School for the 2004-2005 school year. Defendant argues that the Winston School is not the appropriate placement for M.S. because it does not offer the least restrictive environment required by both state and federal regulations. 20 U.S.C. § 1412(5)(B); N.J.A.C. 6:26-2.10. In order for an IEP to offer a FAPE it must provide a "continuum of alternate placements." Oberti v. Bd. of Educ., 801 F. Supp. 1392, 1400 (D.N.J.) aff'd 995 F.2d 1204 (3d Cir. 1993). Furthermore, the least restrictive environment requirement aims to provide mainstreaming opportunities with typical peers. Carlisle Area Sch., 62 F.3d at 535. One of the primary intentions of the IDEA was to help handicapped students achieve independence. The Third Circuit stated that,

> emphasis on self sufficiency indicates in some respect the quantum of benefits the legislators anticipated: they must have envisioned that significant learning would transpire in the special education classroom -- enough so that citizens who would otherwise become burdens on the state would be transformed into productive members of society.

Polk, 853 F. 2d at 182. Defendant argues that the Winston School does not fulfill this requirement.

It is undisputed that M.S. is now making significant improvements at the Winston School. As observed by Dr. Barenbaum, M.S. was heavily reliant on his in class aide to do all of his reading

for him. (3/18/06 Tr. 96-1 to 3).  Dr. Barenbaum also stated that part of mainstreaming a child requires that the school district foster independence so that a child can be doing the work on his own. Id.  The ALJ agreed that such dependence on an in class aide is a heavy restriction on any child.  ALJ Decision at 14.  Additionally such a finding is consistent with the broader policy goals of the IDEA, including Congress' goal of fostering independence and social productivity in children.  See generally Kruelle, 642 F.2d 687, 691; Pa. Ass'n for Retarded Children v. Pa., 343 F. Supp. 279, 296 (D.Pa. 1972); Mills v. Bd. of Educ., 348 F. Supp. 866, 876 (D.D.C. 1972).  At the Winston School, M.S. began to read on his own, without the instruction or help of an aide.  Dr. Barenbaum stated, "I actually see the Winston School . . . as less restrictive because at the Winston School he can work independently." (3/28/05 Tr. 96- 20 to 22).  M.S.'s level of independence is an important factor in creating a least restrictive environment.  The ALJ concluded that the Winston School has been providing M.S. with a FAPE, which is evidenced both by Dr. Barenbaum and Pam Bloom's testimonies as well as M.S.'s progress.  Accordingly it is the finding of this Court that M.S.'s placement in the Winston School provides M.S. with a FAPE in the least restrictive environment.

### F. Notice Requirements

The New Jersey Administrative Code specifically addresses parental reimbursement for unilaterally placing a child in a private school.  The N.J.A.C. states that parents who remove their disabled child from public education and place them in a nonpublic school

> without the consent of or referral by the district board of education, an administrative law judge *may* require the district to reimburse the parents for the cost of that enrollment if the Administrative Law Judge finds that the District had not made a free, appropriate public education available to that student in a timely manner prior to that

> enrollment and that the private placement is appropriate.

N.J.S.A. 6A: 14-2.10(b) (2007) (emphasis added).  The Supreme Court has analyzed the federal IDEA reimbursement provisions, which New Jersey has adopted, stating that the statute has a two pronged requirement, "public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: [1] give the child a free appropriate public education in a public setting or [2] place the child in an appropriate private setting of the states choice."  Florence Co. Sch. Dist. v. Carter, 510 U.S. 7, 15 (1993).  This court finds that the District did neither.

The 2004-2005 IEP was the latest in a line of IEPs that failed to provide M.S. with "significant learning" or to "confer meaningful benefits."  As stated above, this Court agrees with the ALJ's finding that the 2004-2005 IEP did not offer M.S. a FAPE. ALJ Decision at 14-15.  Furthermore, having failed to offer a FAPE, the District did not take the necessary step of attempting to place M.S. in an appropriate private setting.  Since M.S.'s parents have unilaterally removed M.S. from the District, this Court must decide whether or not the Winston School is an appropriate placement.  The ALJ, after hearing testimony and carefully reviewing the facts, determined that M.S. is making progress at the Winston School.  As stated above, the ALJ concluded that the Winston School "would and has provided M.S. with a free and appropriate public education in [the] least restrictive environment and this essentially is the appropriate placement for M.S." ALJ Decision at 15.  It is the finding of this Court that the District did not satisfy the IDEA requirements by not providing M.S. with a FAPE and that the Winston School is an appropriate placement pursuant to the Act.

Defendant argues that Plaintiffs violated N.J.A.C. 6A: 14-2.10(c) because they: (1) did not notify Defendant that they rejected the IEP and intended to enroll M.S. at Winston at the last IEP meeting; (2) did not give written notice to CST of their concerns/intent to enroll M.S. in Winston at least ten (10) business days prior to M.S.'s removal from the District; and (3) acted unreasonably by failing to meaningfully engage in the IEP process. However, the statute stipulates that the cost of reimbursement "*may* be reduced or denied," not that it *must*. Id. Again, the ALJ found that Plaintiffs were not in violation of N.J.A.C. 6A: 14-2.10(c). The ALJ found that the Plaintiffs August 11, 2004 letter to the District was sufficient to put the District on notice of Plaintiffs' dissatisfaction with the proposed IEP. It also appears that the ALJ acted consistently with the spirit of the statute by finding that the Plaintiffs were not acting unreasonably but instead were "entirely justified in unilaterally placing M.S. in an environment where they felt he could/ would succeed predicated upon the advice they received by professionals all of whom testified in great detail throughout the hearing." ALJ Decision at 14. The ALJ also found that the District, by virtue of the August 11, 2004 letter, should have known that the Plaintiffs' intention was to remove M.S. and place him in the Winston School. It is the finding of this Court that Plaintiffs' actions in unilaterally removing M.S. from the District and placing him at the Winston School were justified and that Plaintiffs have satisfied the notice requirement of N.J.A.C. 6A:14-2.10(b).

**IV.     AWARD OF ATTORNEY'S FEES**

Plaintiffs have made an application for reimbursement of reasonable counsel fees. Pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I) (2006), "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability."

The Supreme Court recently found that "the parents enjoy enforceable rights at the administrative stage, and it would be inconsistent with the statutory scheme to bar them from continuing to assert these rights in federal courts." Winkelman v. Parma City Sch. Dist., ___ U.S. ___, 127 S. Ct. 1994, 2002 (U.S. 2007). Pursuant to the IDEA, parents have the right to remove their children from public educational systems, place them in private institutions and seek damages and reimbursement through administrative and federal court proceedings. The amount of compensation and reimbursement of attorney's fees is a matter that the statute leaves to the Courts. In this case, the parents unilaterally removed their child from a school district that was not offering their child a FAPE in accord with the federal statutory requirement. The parents then took the necessary steps to achieve a favorable decision through a due process hearing. It is the finding of this Court that Plaintiffs are entitled to an award of attorney's fees.

### V.     CONCLUSION

For the reasons stated, it is the finding of this Court that Defendant's motion for summary judgment is **denied** and that Plaintiffs' motion for summary judgment is accordingly **granted**. Additionally, Plaintiffs' application for reimbursement of counsel fees is **granted**. An appropriate Order accompanies this Opinion.

    S/ Dennis M. Cavanaugh  
    Dennis M. Cavanaugh, U.S.D.J.

Date:           June   19  , 2007  
Orig.:          Clerk  
cc:             Counsel of Record  
              The Honorable Mark Falk, U.S.M.J.  
              File